**LOOMIS CABINET COMPANY,**
Petitioner,

v.

**OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION, and Lynn Martin, Secretary of Labor, Respondents.**

No. 92–70540.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1994.

Memorandum Jan. 25, 1994.

Order and Opinion March 23, 1994.

Bruce B. Alexander, Sacramento, CA, for petitioner.

Terri P. De Leon, Atty., Barbara Werthman, Counsel for Appellate Litigation, U.S. Dept. of Labor, Office of Sol., Washington, DC, for respondents.

## ORDER

The petition for rehearing is DENIED.

The request for publication is GRANTED. The memorandum disposition filed January 25, 1994 is redesignated as an authored opinion by Judge Goodwin.

Petition to Review a Decision of the Occupational Safety and Health Review Commission.

Before: GOODWIN, WIGGINS and BRUNETTI, Circuit Judges.

## OPINION

GOODWIN, Circuit Judge:

Loomis Cabinet Company ("Loomis") petitions for review of a decision by the Occupational Safety and Health Review Commission ("OSHRC" or "the Commission"). The Commission concluded that an employment relationship did in fact exist between Loomis and the partners of Eastview Cabinet Company ("Eastview"), and affirmed the assessment of penalties against Loomis by the Secretary of Labor for certain violations of the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678 ("OSHA" or "the Act"). We affirm.

Michael Loomis owns Loomis Cabinet Company, which manufactures wood cabinets for installation in tract housing. On January 5, 1988, the Occupational Safety and Health

Administration inspected the Loomis workshop. Two months later the Agency issued one citation alleging nine serious violations and a second citation alleging nine other-than-serious violations of workplace safety standards promulgated under OSHA. The Agency set abatement dates ranging from March 3 through March 31, 1988.

Until two days before the March 3rd abatement date, Loomis employed from 12 to 15 workers. Thereafter, the employees of Loomis formed a partnership named Eastview Cabinet Company, which entered into a contract to manufacture cabinets exclusively for Loomis in exchange for 75 percent of the net profit from the cabinets' sale.

In July 1988, the Occupational Safety and Health Administration attempted a second inspection of Loomis' workshop. The company initially objected and refused entry on the grounds that it had no employees and was therefore not subject to OSHA jurisdiction. Loomis later consented to the inspection and was issued a notification of failure to abate alleged violations, a citation for repeated violations, and a citation for an other-than-serious violation. Loomis contested these citations by letter, dated August 24, 1988, arguing that it was not an employer.

An administrative law judge ("ALJ") of the OSHRC conducted a hearing on April 24, 1989 and affirmed each of the citations and the total penalty proposed by the government. Subsequently, Loomis petitioned for review of the ALJ's decision by the entire Commission. The Commission granted review and found that the workers in question were employees under the Act. The Commission assessed a penalty of $43,900 against Loomis.

## I. *Standard of Review*

We must uphold a decision of the OSHRC unless it is arbitrary and capricious, not in accordance with the law, or in excess of the authority granted by OSHA. *Brock v. Bechtel Power Corp.,* 803 F.2d 999, 1000 (9th Cir.1986). We review the Commission's factual findings under the substantial evidence standard; and we accept reasonable factual inferences drawn by the Commission. *Phelps Dodge Corp. v. OSHRC,* 725 F.2d 1237, 1239 (9th Cir.1984). We must uphold the factfinder's determinations if the record contains such relevant evidence as reasonable minds might accept as adequate to support a conclusion, even if it is possible to draw different conclusions from the evidence. *Landes Const. Co. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir.1987).

## II. *Discussion*

### A. *The OSHRC's Determination that Loomis Is an "Employer"*

Loomis first argues that the Commission erred in finding that an employment relationship existed between Loomis and the partners of Eastview.

The Act circularly defines "employee" as "an employee of an employer who is employed in a business of his employer which affects commerce." 29 U.S.C. § 652(6). The Supreme Court has assisted with this kind of definition by holding that where a statute contains no other provision that either gives specific guidance to the meaning of the term "employee" or suggests that the common law definition is inappropriate, we must presume that Congress intended to incorporate traditional principles of agency law. *Nationwide Mutual Ins. Co. v. Darden,* — U.S. —, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (construing definition of "employee" under ERISA).

We have held that whether an employment relationship exists depends upon the economic realities of the situation. *Lutcher v. Musicians Union Local 47,* 633 F.2d 880, 883 (9th Cir.1980) (analyzing whether employment relationship necessary to succeed on Title VII claim existed); *see also Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376 (3d Cir.1985) (existence of employment relationship under FSLA turns on whether personnel's work is "an integral part of the business"); *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308 (5th Cir.1976) (multifactored common law test used to determine whether employment relationship exists under FSLA); *Van Buren–Madawaska Corp.,* 13 O.S.H.Rep. (BNA) 2157, 2158 (1989) (economic realities test used to determine existence of employment relationship under

OSHA); *but see Clarkson Const. Co. v. OSHRC*, 531 F.2d 451 (10th Cir.1976) (common law definition of employment relationship ought not to be dispositive in interpreting OSHA).

The Supreme Court in *Darden* set out the factors we should consider in determining whether a common law employment relationship exists:

In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, —— U.S. at ——, 112 S.Ct. at 1348 (quoting *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–752, 109 S.Ct. 2166, 2178–79, 104 L.Ed.2d 811 (1989)). Here, the Commission used the economic realities test set forth in *Griffen & Brand of McAllen, Inc.*, 6 O.S.H.Rep. (BNA) 1702, 1703 (1978), but determined that the result would be the same under the *Darden* test. *Loomis Cabinet Co.*, OSHRC No. 88–2012, at 6 n. 9. We agree.

The common law test set forth in *Darden* is a nonexhaustive list of factors and contains " 'no shorthand formula or magic phrase that can be applied to find the answer, .... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.' " *Darden*, —— U.S. at ——, 112 S.Ct. at 1349 (quoting *NLRB v. United Ins. Co. of America*, 390 U.S. 254, 258, 88 S.Ct. 988, 991, 19 L.Ed.2d 1083 (1968)). The central inquiry is: who controls the work environment?

In determining whether an employment relationship exists, the label of "partner" is meaningless. The economic realities test emphasizes the substance over the form of the relationship between the alleged employer and the hired party. *Cf. Castillo v. Givens*, 704 F.2d 181, 188–193 (5th Cir.1983) (label of "independent contractor" meaningless in FSLA enforcement action unless it mirrors economic realities).

The following determinations were made by the Commission and are supported by substantial evidence. The Commission found that Michael Loomis conducted all contract negotiations with suppliers and customers, provided the designs and specifications of the cabinets, provided the tools and equipment, scheduled the work with clients, controlled pricing, controlled choice of materials and marketing, and provided accounting, administrative and financial services for the business. In contrast, the Commission found that the workers provided only their labor. Eastview did no advertising or soliciting, and made minimal effort to gain outside contracts. The Eastview partners worked exclusively for Loomis; they were not allowed to work for other cabinet shops.

The OSHRC determined that Michael Loomis participated to a great extent in the hiring and firing of Eastview "partners." Most significantly, the Commission found that Mr. Loomis owned the workshop and all the equipment, and retained the power unilaterally to change conditions in the workshop. In view of these findings, we cannot say that the Commission's determination that an employment relationship existed was either arbitrary or capricious.

### B. *The Assessment of Penalties against Loomis*

Loomis argued before the Commission that each of the workplace OSHA violations for which it was cited by the Secretary of Labor was either *de minimis* in nature, could not "justifiably" be abated, or could not be abated so as to "materially improve workplace safety." Where the violation of a federal safety regulation has "no direct or immediate relationship to safety or health,"

such violation is *de minimis,* and a citation is not appropriate. *Lee Way Motor Freight, Inc. v. Secretary of Labor,* 511 F.2d 864, 869 (10th Cir.1975). Loomis, however, made no such showing.

Loomis points to no statutory or case law in support of its latter two contentions. Generally, an employer's duty to maintain a safe workplace in accordance with regulations and standards promulgated under OSHA is not limited by traditional common law defenses. *National Realty & Const. Co., Inc. v. OSHRC,* 489 F.2d 1257, 1266 n. 36 (D.C.Cir.1973). "The employer's duty is, however, qualified by the simple requirement that it be achievable and not be a mere vehicle for strict liability." *Id.*

We have held that impossibility is a valid defense against OSHA enforcement actions. *Long Beach Container Terminal, Inc. v. OSHRC,* 811 F.2d 477, 479 (9th Cir. 1987). Nevertheless, this defense should be narrowly construed and the burden lies with the employer to prove impossibility. *Id.* Impossibility will not be found if the employer shows merely that compliance would be difficult, inconvenient, or expensive. *Id.* Loomis failed to sustain its burden because it merely argued that it could better make a determination regarding the "reasonably necessary or appropriate" safety standards for its workshop than could the government regulators.

We have also upheld the "greater hazard" defense—the claim by an employer that the hazards of compliance with OSHA standards would be greater than the hazards of noncompliance—as a valid defense against OSHA enforcement actions. *Noblecraft Industries, Inc. v. Secretary of Labor,* 614 F.2d 199, 205 (9th Cir.1980). This defense, however, cannot be raised in an enforcement proceeding without the employer first exhausting the procedures for obtaining a variance under OSHA. *Id.* Loomis never applied for a variance, and thus this defense is not available.

Loomis also argues that by forming the partnership it believed in good faith that it

was outside the jurisdiction of OSHA and that the penalties assessed against it should be reduced accordingly. The Commission's determination that Loomis' beliefs regarding its duty to comply with the Act were not reasonable is in accordance with the law and must be upheld.

Finally, Loomis contends that the relevant workplace safety standards implemented by the Secretary of Labor under the authority of OSHA are unreasonable. We hold that the OSHA standards at issue are fully within the statutory authority of the Secretary and also must be upheld. *See United States v. Louisiana–Pacific Corp.,* 967 F.2d 1372, 1376 (9th Cir.1992).

**AFFIRMED.**